IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAUL E. DAYMOND, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
| v. | ] |
| | ]   2:11-CV-1199-KOB |
| ERIC H. HOLDER, JR., | ] |
| ATTORNEY GENERAL OF THE | ] |
| UNITED STATES DEPARTMENT OF | ] |
| JUSTICE | ] |
| | ] |
|     Defendant. | ] |

**MEMORANDUM OPINION**

      This Title VII retaliation case comes before the court on Defendant's "Motion to Dismiss or in the Alternative, for Summary Judgment" (doc. 40). Defendant asserts that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law on Plaintiff Paul Daymond's claims of retaliation. The court has considered the submissions and the applicable law. For the reasons stated below, the court will GRANT the Defendant's motion for summary judgment.

**I.**    **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

<u>A.</u>    Factual Background

      Mr. Daymond currently works for the FBI as a Public Affairs Specialist in the Birmingham Division of the FBI. Mr. Daymond has worked for the FBI for twenty-four years and was a Supervisory Administrative Specialist before he assumed his current position.

      In early 2008, according to an internal e-mail sent by Mr. Daymond, the Birmingham

division received the results of a "climate survey," which Mr. Daymond alleges he understood to be very low. The Birmingham division re-established an Employee Advisory Committee ("EAC") in March of 2008, presumably to address the dismal climate survey results. Mr. Daymond was part of the committee.

In attendance at the first committee meeting was Lorenza Moore, the EEO Coordinator. Mr. Moore advised everyone of his role as the EEO Coordinator and explained that he monitored the climate of the office. Mr. Daymond alleges that he did not feel that this role was proper in Mr. Moore's position, as it would cause him to violate the confidentiality of employees who came to him. Mr. Daymond expressed his concern to his Administrative Officer ("AO") and direct superior, Norman Odom.

In October 2008, Mr. Daymond expressed his concern about Mr. Moore and the Birmingham Divisions's EEO program to Barry Ward in FBIHQ's EEO Unit. Mr. Ward validated Mr. Daymond's concern, explaining that if Mr. Daymond's statements were true, Mr. Moore was inappropriately using his EEO coordinator position. Mr. Ward also stated that Mr. Daymond was not the first to raise concerns regarding Mr. Moore, and that Mr. Moore was considered a "snitch for the front office."

That same month, a third party made Mr. Daymond aware of a potential violation of EEO confidentiality that concerned an employee Mr. Daymond supervised. Mr. Daymond sent an e-mail with his concerns to Henry Noonan of the FBIHQ Human Resources division and copied Mr. Ward and Richard Davidson, the FBIHQ EEO Unit Chief. These concerns were eventually brought to the attention of Edward Brousard, Chief of the FBIHQ Office of General Counsel, Employment Law Unit.

Also in October, 2008, Mr. Daymond and AO Odom both expressed their concerns over the lack of confidentiality in the Birmingham EEO program to the Assistant Special Agent in Charge, Robert Haley. Mr. Daymond and AO Odom also advised Mr. Haley that Mr. Daymond had contacted the FBIHQ EEO unit about Mr. Moore. Mr. Haley responded that Mr. Moore had received a call from FBIHQ and that Mr. Moore was not happy.

In January 2009, AO Odom filed a formal EEO complaint against members of the Birmingham Division management. His complaint included concerns over the EEO program, among others. Later in January, Inspectors from the FBIHQ Inspection division interviewed Mr. Daymond in connection with AO Odom's Complaint. Mr. Daymond expressed concerns over the EEO program in these interviews, specifically discussing Mr. Moore's lack of confidentiality. Mr. Daymond alleges that the FBIHQ Inspectors failed to document his concerns in signed, sworn statements.

On February 12, 2009, Mr. Haley met with AO Odom, and Mr. Haley told AO Odom he should try to work with the "informal leaders" in the office to improve office morale. Mr. Haley specifically identified Mr. Moore in this group of informal leaders with whom he thought AO Odom should work. Mr. Haley also told AO Odom during this conversation that Mr. Moore was not happy allegedly because of Mr. Daymond's complaints about Mr. Moore. Mr. Haley also stated that he felt that Mr. Daymond was part of the office's overall morale problem, and that he would not recommend Mr. Daymond for the position of AO if he had to "make a recommendation today for a new AO."

According to Mr. Daymond's February 18, 2009 e-mail to Kecia Williams, FBI EEO Counselor, at the February 12, 2009 meeting between Mr. Haley and AO Odom, Mr. Haley

3

identified Mr. Moore as an "informal leader" because he felt Mr. Moore had influence over other employees in the office and could work with them.

Mr. Daymond alleges that several meetings with Mr. Daymond show discrimination. In the first encounter with Mr. Haley on February 13, 2009, Mr. Haley told Mr. Daymond that Mr. Moore was talking negatively about him because of Mr. Daymond's involvement in AO Odom's EEO complaint. Mr. Haley also told Mr. Daymond that he was part of a morale problem in the office and that if Mr. Daymond had problems, Mr. Haley would not support him. Additionally, Mr. Haley told Mr. Daymond that he needed to work on his "bedside manner" and encouraged Mr. Daymond to look at other positions within the FBI.

At the second meeting on February 19, 2009, Mr. Haley advised Mr. Daymond that Mr. Moore had negative feelings about Mr. Daymond because Mr. Moore felt attacked by visitors to the FBI. Mr. Daymond alleges that he believed Mr. Haley was referring to the EEO Inspectors visiting the Birmingham Division.

On March 6, 2009, Mr. Haley conducted a meeting with all of the Birmingham Division support employee managers. During the meeting, Mr. Daymond alleges that Mr. Haley raised questions about Mr. Daymond's ability to perform his collateral duties, but did not raise questions about anyone else's ability to perform.

On April 7, 2009, Mr. Haley conducted a leadership seminar where he presented a hypothetical scenario about an EEO Counselor not paying proper attention to the confidentiality requirements of the position. Mr. Daymond alleges that these comments were "chilling" to him because he had expressed previous concerns about Mr. Moore's confidentiality of EEO matters.

B.   EEO Procedural History

Mr. Daymond alleges that he first contacted an EEO counselor by telephone about his concerns on February 13, 2009.  The Defendant alleges Mr. Daymond's first contact was on February 17, 2009.  Mr. Daymond filed a Complaint of Discrimination ("COD") on April 7, 2009 (doc. 41-1).  In response to a question on the COD about how Mr. Daymond was discriminated against, he responded by detailing the incidents with Mr. Haley on February 13 and 19, 2009.  Mr. Daymond's COD alleged reprisal discrimination and stated April 7, 2009, as the date that the most recent alleged discrimination took place. Mr. Daymond did not claim Race, Color, Age, or any other type of discrimination in the COD.

In the COD, Mr. Daymond claimed that Mr. Moore created a hostile work environment because of Mr. Daymond's "direct involvement in an ongoing EEO matter," and that this negative work environment undermined Mr. Daymond's ability to do his job as a supervisor (doc. 41-1). In three subsequent e-mails to FBI EEO Officers, Mr. Daymond alleged further instances of reprisal discrimination.

On April 23, 2009, Mr. Daymond sent an e-mail to Veronica Venture, EEO Officer for the FBI, reporting Mr. Haley's remarks to AO Odom that if EEO complaints continue in the Birmingham Division the FBIHQ will decide they need to "clean house."   On May 7, 2009,  Mr. Daymond sent an e-mail to Ms. Venture describing ASAC Charles E. Regan's announcement that Mr. Moore was no longer the FBI EEO coordinator at an employees' conference as "chilling" and creating a hostile work environment. On May 20, 2009, Mr. Daymond sent an e-mail to Ms. Venture describing Mr. Haley's conduct at the April 7, 2009 leadership seminar as an act of retaliation.

5

In response to Mr. Daymond's COD, the FBI EEO Office conducted an investigation. On June 29, 2009, Ms. Venture, notified Mr. Daymond that the FBI EEO Office accepted three allegations for investigation: whether Mr. Daymond was retaliated against for engaging in prior EEO activity when Mr. Haley made remarks on February 12 and 19, 2009: (1) that Mr. Daymond was part of the office morale problem; (2) that Mr. Daymond would not be recommended for a promotion opportunity within that office; and (3) that Mr. Daymond would not be supported if he caused any problems in the office.

This notification informed Mr. Daymond that if he disagreed with the decision not to accept the additional allegations for investigation, he could disagree in writing within fifteen calendar days after the receipt of the letter. Mr. Daymond submitted his written response disagreeing with the accepted issues and requesting additional allegations to be accepted for investigation. The allegations Mr. Daymond wanted to be included in the investigation involved (1) unspecified negative comments made by Mr. Moore about Plaintiff; (2) that Plaintiff was told by Mr. Haley that Headquarters could conduct an inspection of the Birmingham Division and possibly clean house if the complaints continued; (3) that Birmingham Division management failed to take any action against Mr. Moore; (4) that the use of the EEO counselor violating confidentiality example during the April 7, 2009, presentation was inappropriate; and (5) when Mr. Haley allegedly stated he would not recommend Plaintiff for an Administrative Officer's position if one were to become available.

On August, 17, 2009, Ms. Venture notified Mr. Daymond that the FBI EEO Office would not accept the five additional allegations for investigation because they did not state a claim for discrimination. The claims did not allege any harm or loss with respect to a term, condition, or

privilege of his employment. The letter also informed Mr. Daymond that he had fifteen days to submit his disagreement with the rejection of his claims in writing. Mr. Daymond did not submit any disagreement with the rejection of these claims.

C.      Additional Factual Allegations

In the fall of 2009, Mr. Daymond alleges several other incidents with Mr. Haley. Mr. Daymond alleges that on September 24, 2009, Mr. Haley made a remark at a management retreat that negatively implicated Mr. Daymond for filing a frivolous EEO claim. Mr. Daymond alleges that Mr. Daymond stated the reason for negativity within the FBI Birmingham Division was "because people had to raise their right hands on frivolous EEO's and OPR's." Doc. 37, at 7. Mr. Daymond alleges that on October 1, 2009, he was pressured to take a position of less status and prestige, Public Affairs Specialist, because of ongoing undermining of his supervisory responsibilities. On October 3, 2009, Mr. Daymond alleges that he suffered a lowered Performance Appraisal Report, which resulted in Mr. Daymond losing eligibility for merit pay increases. No evidence exists in the record to support the lowered PAR or change in position.

D.      Subsequent Agency Action

Mr. Daymond initially requested a hearing with the Equal Employment Opportunity Commission, but he later withdrew his request for a hearing. The EEOC issued a final agency decision on June 8, 2010, finding that the FBI did not discriminate against Mr. Daymond on the basis of reprisal.

Mr. Daymond filed an appeal to the EEOC Office of Federal Operations ("OFO"). On January 7, 2011, the OFO issued a decision affirming the final agency decision that no claim of reprisal discrimination existed. The letter also informed Mr. Daymond of his right to file a civil

action in U.S. District Court within 90 days.

E.	District Court Procedural History

Mr. Daymond brought the original lawsuit in this action on April 8, 2009 (doc. 1). Upon the Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment (doc. 5), the court dismissed the case without prejudice on February 16, 2012 for failure to state a claim upon which relief can be granted (doc. 35). Mr. Daymond filed an Amended Complaint on March 20, 2012 (doc. 37) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination and Employment Act of 1967 (Pub. L. 90-202), as amended, but Mr. Daymond does not state a claim under the ADEA in any one of his ten counts in the Amended Complaint. In his Amended Complaint, Mr. Daymond brings ten counts of retaliation under 42 U.S.C. § 2000e-3(a), claiming that the Defendant violated the anti-retaliation provisions of Title VII.

F.	Allegations of the Amended Complaint

Count I alleges that Mr. Daymond's Performance Appraisal Report was lowered because of Mr. Haley's retaliatory animus. Count II alleges that Mr. Daymond's supervisory duties were removed and his upward mobility was damaged because of Mr. Haley's retaliatory animus. Count III alleges that Mr. Haley made remarks at a management retreat because of Mr. Daymond's Title VII complaint that chilled and humiliated him. Count IV alleges that Mr. Haley made threatening comments on April 22, 2009, which indicated that FBI Investigators would come to Birmingham and "clean house" if EEO complaints continued.

Count V alleges that Mr. Haley humiliated and "chilled" Mr. Daymond during a leadership training on May 20, 2009. Count VI alleges that Mr. Haley intentionally damaged Mr.

Daymond's reputation as an employee because of Mr. Daymond's involvement in Title VII matters. Count VII alleges that Mr. Haley tried to interfere and obstruct the EEO process on September 24, 2009, when he spoke to other supervisors about negativity in the division caused by frivolous EEO complaints.  Count VIII alleges that the FBI  failed to exercise reasonable care in preventing and promptly correcting wrongful conduct within the Birmingham Division of the FBI. Count IX alleges that the FBI EEO Office lost material evidence of Mr. Daymond's Signed Sworn Statement in connection with another FBI employee's Title VII investigation and failed to document Mr. Daymond's interview with the FBI Inspection Division. Count X alleges that the FBI EEO Office failed to accept for investigation Mr. Daymond's claims of a hostile work environment and thus failed in its investigative duties and responsibilities.

On May 5, 2012, Defendant filed a "Motion to Dismiss or in the Alternative, for Summary Judgment" (doc. 40). The parties have fully briefed the Motion, and it is the final motion pending before the court.

## II.      STANDARD OF REVIEW

Rule 56(d) dictates that if on a motion under 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 56(d).  In this case, the parties have engaged in an exhaustive FEBI EEO proceeding related to this case, and both parties have presented evidence on Mr. Daymond's claims. Defendant filed the "Motion to Dismiss or in the Alternative, for Summary Judgment" with four evidentiary exhibits (doc. 41), and Mr. Daymond opposed the motion by responding with a brief that incorporated earlier evidentiary submissions (doc. 43). Thus, the court considers all evidence on the record, including Exhibits 1-6 attached to the

Defendant's first Motion to Dismiss or in the Alternative, for Summary Judgment (doc. 6) and Exhibits 1-16 attached to Mr. Daymond's Response in Opposition to the Motion to Dismiss or in the Alternative, for Summary Judgment (docs. 14-17).  Because such a substantial record exists from the extensive administrative proceeding, this court will consider the motion for summary judgment at this time.

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

**III.    DISCUSSION**

A.    Exhaustion of Administrative Remedies

As a general rule, a federal employee must pursue and exhaust his administrative remedies as a jurisdictional prerequisite to filing a Title VII action. *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006). However, under the so-called *Gupta* rule, a plaintiff is not required to administratively exhaust a retaliation claim that arises out of a previously and properly filed EEOC discrimination claim because the court has ancillary jurisdiction over the subsequent claims. *Hargett v. Valley Federal Sav. Bank*, 60 F.3d 754, 762 (11th Cir. 1995) (citing *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981)).

Mr. Daymond filed his COD on April 7, 2009, alleging reprisal discrimination. Any of the Defendant's actions taken after that date that gave rise to a claim of retaliation that are related to the COD for reprisal discrimination are properly before this court under the *Gupta* rule. Counts I though X, all retaliation claims, arose subsequent to Mr. Daymond's filing of his COD on April 7, 2009. Mr. Daymond properly exhausted all of his administrative remedies and received a right to sue letter from the EEOC OFO on January 7, 2011. Because he has properly exhausted all administrative remedies regarding his COD alleging reprisal discrimination, the court now considers the Defendant's argument that Mr. Daymond's Amended Complaint fails to establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a).

B.    Prima Facie Case of Retaliation

An employee may not be retaliated against for having "opposed any practice made an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42

U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [ ]he engaged in statutorily protected conduct; (2) that [ ]he suffered adverse employment action; and (3) that there is 'some causal connection' between the two events." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010) (citing *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)).

      1.      Statutorily Protected Conduct

First, Mr. Daymond must establish that he engaged in statutorily protected conduct. For purposes of establishing a prima facie case of retaliation under Title VII, "[s]tatutorily protected expression includes filing complaints with the EEOC." *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (citing *Rollins v. State of Fla. Dept. Of Law Enforcement,* 868 F.2d 397, 400 (11th Cir. 1989)). Mr. Daymond has conclusively established that he engaged in statutorily protected conduct by properly filing a COD with the FBI EEO Office on April 7, 2009 (doc. 41-1).

Mr. Daymond also alleges that he participated in Title VII protected activity when the FBI's EEO investigator, Gary Ludwick, interviewed him in connection with the formal Title VII complaint filed by AO Odom. An employee's deposition testimony on behalf of a coworker in that coworker's discrimination suit against an employer is protected activity under Title VII. *Shoaf v. Kimberly-Clark Corp.*, 294 F. Supp. 2d 746, 756 (M.D. N.C. 2003). Mr. Daymond's allegation that he conducted an interview related to AO Odom's EEO claim against the FBI is sufficient to show statutorily protected conduct.

      2.      Adverse Employment Action

Second, Mr. Daymond must establish that he suffered some adverse employment action.

To prove the existence of an adverse employment action, "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)(quoting *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))).

The Eleventh Circuit defines adverse employment action as "conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006) (citing *Gupta v. Fla. Board of Regents,* 212 F.3d 571, 587 (11th Cir. 2000)).  Although Title VII's protection against retaliatory action does extend to adverse action that falls short of final employment decisions, the plaintiff must establish "some threshold level of substantiality." *Id.* (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)).  Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). The court should look to the total alleged adverse action to determine if the plaintiff has meet the burden of adverse employment action. *Cotton*, 434 F.3d at 1232.

Mr. Daymond's Amended Complaint alleges adverse employment action in the form of (1) a lowered Performance Appraisal Report, making Mr. Daymond ineligible for merit pay increases; (2) the removal of Mr. Daymond's supervisory duties; and (3) pressure that forced Mr.

Daymond to take a position of less stature and prestige, with a less distinguished title.  In Mr. Daymond's "Brief in Opposition to Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment" (doc. 43), Mr. Daymond states that he suffered a lowered Performance Appraisal Report on October 30, 2009, when "Haley downgrade[d] Plaintiff's Supervisory Specialist Performance Appraisal Report two levels in one of his critical elements, making Plaintiff ineligible for and incapable of being chosen for a merit pay increase." Doc. 43, at 27. In his Brief, Mr. Daymond also states he was "moved to" or "placed in" the position of Public Affairs Specialist on October 1, 2009. Doc. 43, at 21, 27. However, Mr. Daymond failed to offer the Performance Appraisal Report or any document showing a change in position or duties. He does not contend that the Public Affairs Specialist position pays less or more than his prior position as Supervisory Administrative Specialist.

At the summary judgment stage, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  Thus, Mr. Daymond's evidence "is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson*, 477 U.S. at 255. Viewing the evidence in the light most favorable to Mr. Daymond, he presents enough evidence to create a genuine issue of material fact as to whether the Defendant "forced" or "pressured" him into taking the Public Affairs Specialist position. A less prestigious change in position coupled with a downgrade in PAR could be viewed as an adverse employment action sufficient to meet the first element of a prima facie case of retaliation.

    3.    <u>Causation</u>

Assuming that Mr. Daymond's evidence alleges an adverse employment action for the

purpose of establishing a prima facie case of retaliation, Mr. Daymond still fails to meet the third element that requires proof of causation. To show that an employer took an adverse employment action *because of* the employee's protected expression, the employee must prove that the "protected activity and the adverse action are not completely unrelated." *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 978 n. 52 (citing *Wideman*, 141 F.3d at 1457)).

Mr. Daymond attempts to establish the causal connection between the filing of his EEO Complaint and his lowered PAR and change in position in his Amended Complaint through Mr. Haley's Signed Sworn Statement ("SSS") (doc. 6-6). The unfounded statements in the Complaint do not establish any causal connection between Mr. Daymond's protected activity and alleged adverse employment action. Mr. Daymond relies on Mr. Haley's statement linking Mr. Daymond's COD to AO Odom's COD to connect Mr. Daymond's filing of his own EEO complaint to his change in position or lowering of his PAR. Mr. Haley's statement that he believed AO Odom's and Mr. Daymond's CODs are linked does not establish causation for Mr. Daymond's claims of retaliation.

Mr. Haley's statements that he believed AO Odom was engaged in a scorched earth campaign to divert attention from his own problems also do not show any causal connection between Mr. Daymond's COD and the alleged adverse employment actions taken against him. Mr. Daymond's claim that Mr. Haley's SSS itself was meant to dissuade Plaintiff from further pursuing Title VII claim also has no merit.

Mr. Daymond's contention that his performance as a manager had never been an issue before his involvement in Title VII activity is directly contradicted by Mr. Haley's statement that references Mr. Daymond's perpetual problems over the years with people skills and relationships

with fellow FBI employees. In his SSS, Mr. Haley recognized that he had only been in the Birmingham Division for a short time, but he had heard the same concerns he observed about Mr. Daymond's interpersonal skills from other employees who had been in the Birmingham Division for several years. Assistant Special Agent in Charge Charles E. Regan also stated in his SSS (doc. 6-5) that he had numerous employees come to him over the years with concerns about how Mr. Daymond had treated them. Mr. Daymond's allegations that ill feelings toward him only developed after his Title VII protected activity are unsupported, and Mr. Haley's short tenure is not enough to establish an animus toward Mr. Daymond that is causally linked to his Title VII activities.

Contrary to Mr. Daymond's intent, Mr. Haley's Sworn Statement works against Mr. Daymond's claims by illustrating a concrete and legitimate reason for Mr. Daymond's claimed adverse employment action. Mr. Haley's SSS highlights Mr. Daymond's perpetual problems with "people skills" and his "bedside manner," both of which could be legitimate, non-discriminatory reasons for his movement from Supervisory Affairs Specialist to Public Affairs Specialist or his downgraded PAR. Regan states in his SSS that he "agreed with ASAC Haley that [Mr.] Daymond had room for improvement with regard to his interpersonal skills when dealing with the FBI employees that he supervises" (doc. 6-5). Regan also cites numerous complaints from the employees Mr. Daymond supervised about the way Mr. Daymond treated them.  These aggrieved employees consistently wanted to be re-assigned to someone other than Mr. Daymond. Regan also states that AO Odom agreed with his concerns about Mr. Daymond's interpersonal skills. AO Odom states in his SSS that some employees complained to him about Mr. Daymond's behavior and that he spoke with Mr. Haley about Mr. Daymond's "weaknesses" including his

17

"bedside manner" (doc. 24).

No evidence exists to support the contentions that the FBI and EEOC failed to thoroughly investigate Mr. Daymond's complaint or failed to properly train and supervise its employees in EEO matters. Mr. Daymond's alleged statements of causation establish no actual causation but instead attempt to make connections between events and remarks that are conclusory and illogical only based on his unsupported suppositions. See *Graham,* F.3d 1274, at 1282 ("The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference.").

    4.    Pretext

Even if the plaintiff can present genuine issues of material fact on all elements of a prima facie case of retaliation, the burden of production then shifts to the defendant to establish "non-retaliatory" reasons for the adverse employment actions. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494-95 (11th Cir. 1989). The plaintiff then can refute these legitimate reasons by proving that they are pretextual. *Id.* To prove pretext, a plaintiff must introduce evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's proffered legitimate reasons that a reasonable fact finder would find the proffered reasons "unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004).

Even if Mr. Daymond could establish a prima facie case of retaliation, he subsequently fails to provide evidence to create a genuine issue of material fact of any pretext. The Defendant has proffered evidence showing that Mr. Daymond had continuing issues with interpersonal skills in the Birmingham Division of the FBI. In his Response, Mr. Daymond states that "a

reasonable jury presented with the evidence would find the Defendant's actions retaliatory and hostile," but he does not offer *any* evidence of pretext. Mr. Daymond again relies on Mr. Haley's SSS as evidence of a "retaliatory animus," but Mr. Haley's statements do not indicate any such animus.  Just as Mr. Daymond offers no persuasive evidence linking his alleged adverse employment action to his Title VII protected activities, he does not offer any persuasive evidence that the Defendant's proffered reasons are pretextual.

## IV.    CONCLUSION

The Defendant does not dispute many of Mr. Daymond's allegations, and those that he does dispute are not material to Mr. Daymond's retaliation claims. Mr. Daymond has failed to offer evidence to create a genuine issue of material fact on at least two of the elements required for a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a).  Because no genuine dispute of material fact exists and the Defendant is entitled to judgment as a matter of law, the Defendant's Motion for Summary Judgment is due to be GRANTED, and the case is due to be DISMISSED WITH PREJUDICE.  A separate order will be filed contemporaneously to that effect.

Dated this 5th day of September, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE